UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 06-40190-FDS |
| v. | ) ) | |
| PREFERRED LABOR LLC, d/b/a PREFERRED PEOPLE STAFFING, and PREFERABLE PEOPLE, LLC, | ) ) ) ) | |
| Defendants. | ) ) | |

### MEMORANDUM AND ORDER ON MOTION FOR
### SUMMARY JUDGMENT BY DEFENDANT PREFERABLE PEOPLE, LLC

**SAYLOR, J.**

This is an action by the Equal Employment Opportunity Commission against a temporary labor agency in Worcester, Massachusetts. The EEOC alleges that defendant Preferred Labor LLC ("Preferred") discriminated against applicants for temporary work based on their gender. After the alleged discriminatory incidents, and after the EEOC filed its initial complaint against Preferred, defendant Preferable People LLC ("Preferable") purchased most of the assets of Preferred's Worcester operations and began running its own temporary labor agency out of the former Preferred office. The EEOC then amended its complaint to include Preferable as a defendant, and now seeks to hold Preferable liable as a successor-in-interest to Preferred.

To the extent the EEOC seeks monetary damages, it is acknowledged that Preferred has sufficient assets from which to pay them. As for injunctive relief, the EEOC acknowledges that

the violations are not ongoing and that Preferable has never engaged in the discriminatory practice. The question is whether Preferable may be nonetheless enjoined from engaging in discriminatory practices, simply because it is the successor to Preferred.

Preferable has moved for summary judgment on the grounds that successor liability in inappropriate in this instance. For the following reasons, the motion for summary judgment will be granted.

**I.     Background**

The facts are described in the light most favorable to the plaintiff, unless otherwise noted.

Preferred Labor LLC operated a temporary labor agency in Worcester, Massachusetts. Every morning at approximately 5:00 a.m., people would show up at its office and sign up to work for the day. Preferred had clients who put in requests for a certain number of workers to do certain types of jobs, such as construction or janitorial work. As people with the requisite skills to meet the client requests came in, Preferred would assign them to a job for the day, and transport them to the job in vans.

A woman named Catherine Darensbourg complained to the EEOC that beginning in at least May 2005, and continuing until April 2007, Preferred refused to assign her to certain jobs for which she was qualified solely because she was a woman. The EEOC alleges that Preferred classified available jobs by gender, complied with gender-based requests from its business clients (e.g. to only send men to perform certain work), and retaliated against Ms. Darensbourg when she complained about the discrimination.

In April 2007, Preferred signed an Asset Purchase Agreement ("APA") with Preferable People LLC. The agreement provided, among other things, that Preferable would purchase all the

assets associated with Preferred's Worcester operation except for the computers and accounts receivables.[1]  Preferable had been in business operating temporary labor offices for a number of years, but did not have an office in Worcester until the purchase of Preferred's operations.  As part of the deal, Preferable purchased the rights to use the name "Preferred" in association with temporary labor staffing in the area.[2]  The APA also included an indemnity and hold-harmless clause, indicating that Preferred, and not Preferable, would be liable for any claims arising from events prior to the signing of the APA.

After the purchase, Preferable operated a temporary labor agency out of Preferred's former office.  The day-to-day operations were not significantly changed.  However, as was its corporate-wide practice, Preferable conducted anti-discrimination and equal employment opportunity training for employees at the Worcester office, and posted EEO notices for the temporary work applicants.  Preferable required that all of Preferred's former employees who wished to retain their jobs fill out a new job application, which included a pledge to uphold equal employment opportunity.  Preferable refused to do business with the client of Preferred that was specifically alleged to have made the gender-based requests.  The EEOC has not alleged that any instances of discrimination occurred after Preferable took over operations in Worcester.

There is significant disagreement as to whether Preferable should be characterized as a "successor-in-interest" to Preferred.  The EEOC contends that Preferable purchased substantially all of Preferred's assets, and points out that Preferred no longer conducts any business

---

[1] Preferable also purchased the assets, and took over the operations, of 13 other offices that had been run by Preferred.

[2] The Worcester office had both "Preferred" and "Preferable" signs displayed for at least six months following the APA.  At some point thereafter, the "Preferred" sign was removed.

operations.[3] Preferable and Preferred contend that Preferable purchased only 14% of Preferred's assets. There is also disagreement as to whether the managers and permanent employees of Preferred who were alleged to have participated in the discrimination were ever employed by Preferable.

## II.  Analysis

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant . . . would permit a rational fact finder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir. 1990).

### A.    Successor Liability

The question of whether Preferable is a "successor" to Preferred "is simply not meaningful in the abstract." *Howard Johnson Co. v. Detroit Local Joint Executive Board*, 417 U.S. 249, 264 n.9 (1974).[4] There is no single definition of "successor" applicable in every legal context. *Id*. The relevant question in this case is whether it is appropriate to use the doctrine of successor liability to require Preferable to pay damages or to impose equitable remedies because of its

---

[3] Preferred, however, has not been dissolved; the entity still exists for the purpose of resolving this lawsuit.

[4] *Howard Johnson* involved accusations of unfair labor practices. However, the principles of successor liability that apply in that context are equally applicable in cases involving employment practices that violate Title VII. *See, e.g. EEOC v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1090 (6th Cir. 1974).

4

relationship to the entity that actually committed the violation. In the Title VII context,

> a court should consider three principal factors before making a successor liability determination: (1) continuity in operations and work force of the successor and predecessor employers; (2) notice to the successor employer of its predecessor's legal obligation; and (3) ability of the predecessor to provide adequate relief directly.

*Rego v. ARC Water Treatment Co.*, 181 F.3d 396, 402 (3d Cir. 1999). *See also Bates v. Pacific Maritime Asso.*, 744 F.2d 705, 709-710 (9th Cir. 1984).[5] "These factors indicate that both fairness and necessity are inherent considerations in successorship analysis." *See Bates*, 744 F.2d at 709-710.

### 1.     **Continuity of Operations**

The imposition of successor liability may be appropriate when the successor has essentially continued the operations of the predecessor. That inquiry is not dependent on the manner in which the assets of one company were transferred to the other. *See Asseo v. Centro Medico Del Turabo, Inc.*, 900 F.2d 445, 451 (1st Cir. 1990) (citing *Fall River Dyeing & Finishing Corp v. NLRB*, 482 U.S. 27, 43 (1987)). Similarly, the fact that the successor and the predecessor have separate corporate structures does not necessarily make the imposition of successor liability inappropriate. *See Trujillo*, 694 F.2d at 224.

The focus of the "continuity of operations" inquiry is whether the successor's operations are identical, or very similar, to those of its predecessor. The relevant factors include (1) whether the same employees and management are in place; (2) whether the same product or service is

---

[5] Other courts use similar tests that expand the "continuity of operations' factor into additional, more specific factors, such as continuity of employees and management, whether the same products are produced, continuity of facility and equipment, or whether the same method of production or operation is used. *See, e.g., MacMillan*, 503 F.2d at 1094; *Trujillo v. Longhorn Mfg. Co.*, 694 F.2d 221, 224 (10th Cir. 1982).

produced or offered; (3) whether the same facility and equipment is in use; and (4) whether the same method of production or operation is followed. *MacMillan*, 503 F.2d at 1094. As to the first factor, there is some dispute as to how long various Preferred employees and managers maintained employment and oversight responsibility at the Worcester facility after Preferable took over operations. However, the second, third, and fourth factors strongly suggest that the continuity-of-operations factor has been satisfied. Preferable is still (1) running a temporary labor agency, (2) out of the same office used by Preferred (and using some of the same desks, vans, and equipment), (3) using the same basic day-to-day procedures.

Fairness also demands consideration of whether the potentially discriminatory practices of the predecessor are being followed by the successor. *Id* at 1090 (quoting *Golden State Bottling Co. v. NLRB*, 414 U.S. 168 (1973) for the proposition that successor liability should attach when the change of employers does not change the likelihood that potential victims will be hurt by the continued questionable policies). Here, Preferable has implemented non-discriminatory policies and has discontinued Preferred's practices.[6]

Regardless of the similarity of operations, successor liability will not be imposed if it is not necessary. *See Bates*, 744 F.2d at 709-710. However, even if the successor has implemented model equal employment policies, successor liability may attach if necessary to make the victims of the discrimination whole and further the important public policy goals of equal employment opportunity.

### 2. <u>Notice</u>

---

[6] Conversely, if the successor benefitted from the predecessor's discriminatory practices, successor liability is more likely to attach. *Trujillo*, 694 F.2d at 225. There is no evidence of that in this case.

The second factor for successor liability is easily satisfied. There is no dispute that Preferable had notice of the EEOC suit against Preferred when it signed the APA and took over the Worcester office.

### 3. **Ability of Preferred to Provide the Necessary Relief**

The third factor for imposing successor liability concerns the ability of the predecessor to provide adequate relief. If the predecessor no long has sufficient assets to pay monetary damages, successor liability may be appropriate to ensure compensation to the victims or to ensure that the new entity does not enjoy a market advantage that arises out of a discriminatory practice. *See MacMillan*, 503 F.2d at 1092. *See also Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 748-751 (7th Cir. 1985). Similarly, if the appropriate remedy is equitable in nature, the successor employer may be required to reinstate the discrimination victim. *See Ramirez v. DeCoster*, 194 F.R.D. 348 (D. Me. 2000) ("the successor doctrine was designed to grant remedial relief—i.e., backpay, reinstatement, or seniority—to an employee who, solely because of a change in ownership, is unable to obtain similar relief from the predecessor"). *See also Bates*, 744 F.2d at 711 (finding successor liability for injunctive relief, where the predecessor was available to provide monetary damages, and where the burden to successor was slight and the benefits to the plaintiff class were significant).

Here, it is not disputed that Preferred has sufficient assets to cover any monetary damages sought by the EEOC.[7] The question, then, is whether Preferable is a necessary party in order to provide complete equitable relief.

---

[7] At the July 14, 2008 hearing on plaintiff's motion to amend the complaint, EEOC's counsel expressly acknowledged that "Preferred is certainly insured enough to provide the [monetary] relief that EEOC is seeking." See docket #65-4, Exh. H.

The most common form of equitable relief for which a successor is necessary is reinstatement. *See Chungchi Che v. Mass. Bay Transp. Auth.*, 342 F.3d 31, 43 (1st Cir. 2003). The complainant (Ms. Darensbourg) is not, however, seeking such relief. The EEOC argues, however, that in order to further the important public policy of ensuring equal employment opportunities, Preferable must provide relief that Preferred—because it no longer conducts any business—cannot provide. The EEOC has suggested as possible forms of equitable relief (1) the issuance of a press release by Preferable, or a letter to its clients, indicating that discrimination has occurred previously at the Worcester location, but that the practice has been disavowed, and will no longer be tolerated; or (2) rewriting of anti-discrimination policies, retraining of employees, and periodic reporting to the EEOC. However, the EEOC has not alleged that Preferable has violated any equal employment laws, or that it is likely to do so in the future.

Preferable argues that none of these measures are *necessary*, as none would make past discrimination victims whole or prevent future discrimination. Furthermore, Preferable argues, the first option would accomplish nothing but sullying its reputation with its clients, and the second option is unnecessary because it already has adequate anti-discrimination policies, it has retrained all of its employees that were formerly with Preferred, and all new Preferable employees receive anti-discrimination training as a matter of course.

Although the question of successor liability is a question of fact, the question of what equitable relief is appropriate or necessary is left to the sound discretion of the District Court. *See Easley v. Anheuser-Busch, Inc.*, 758 F.2d 251, 263 (8th Cir. 1985). Thus, before determining whether a reasonable fact-finder could determine that Preferred is able to provide the necessary relief, the Court must determine what relief it would deem necessary.

### B. <u>Whether Equitable Relief Is Necessary</u>

Assuming that unlawful discriminatory employment practices have been found,

> Title VII vests District Courts with broad discretion to award appropriate equitable relief to remedy unlawful discrimination. The Courts are empowered to order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees or any other relief as the court deems appropriate.

*Brzozowski v. Corr. Physician Servs.*, 360 F.3d 173, 181 (3d Cir. 2004) (internal citations omitted). *See also* 42 U.S.C. § 2000e-5(g). While the awarding of some injunctive relief is mandatory where the discrimination is ongoing, such relief is *not* required where the discrimination has ceased and there is no reasonable probability of further noncompliance. *See In re National Airlines*, 700 F.2d 695, 697 (11th Cir. 1993). *Accord Anheuser-Busch,* 758 F.2d at 263 (finding the injunction issued by the district court to be too broad, and thus unfair to the employer, and remanding to fashion an injunction that would apply only to the group of employees at the facility affected).

Here, and as noted, the victim is not requesting reinstatement. Moreover, Preferable does not have a history of discrimination and has implemented anti-discrimination policies; the EEOC does not allege that those policies are deficient or that discrimination is ongoing. Accordingly, the Court concludes that injunctive or equitable relief against Preferable is not necessary to achieve justice, and would serve only a symbolic purpose, if any. Under the circumstances, the Court will not order such relief.

If it is determined that Preferred engaged in discriminatory employment practices, Preferred has sufficient assets from which to pay the monetary damages sought by the plaintiff. Because the EEOC has admitted that fact, and because the Court has decided that damages are

9

the only potential relief to be awarded in this case on the present facts, no reasonable factfinder could determine that plaintiff would be unable to collect adequate relief from Preferred. It follows that no reasonable factfinder could conclude that successor liability should be imposed upon Preferable.

### III.     Conclusion

For the foregoing reasons, defendant Preferable's motion for summary judgment is GRANTED.

**So Ordered.**

|  |  |
|---|---|
|  | /s/ F. Dennis Saylor |
|  | F. Dennis Saylor IV |
| Dated: February 13, 2009 | United States District Judge |